[Cite as *In re R.T.*, 2025-Ohio-5858.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE R.T. | : | |
| A Minor Child | : | No. 115100 |
| [Appeal by R.T.] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 31, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas,
Juvenile Division
Case No. DL-24112659

### *Appearances:*

Wegman Hessler Valore and Matthew O. Williams, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alec Bashein, Assistant Prosecuting Attorneys *for appellee*.

SEAN C. GALLAGHER, P.J.:

{¶ 1} Appellant R.T. appeals the juvenile court's judgment adjudicating him delinquent of making false alarms. After a review of the record and the applicable law, we affirm the juvenile court's judgment.

{¶ 2} In this case, a complaint was filed on December 2, 2024, alleging that or about October 2, 2024, R.T., who was then 13 years of age, engaged in

conduct that constitutes the offense of making false alarms under R.C. 2917.32(A)(1), which is a misdemeanor of the first degree if committed by an adult. R.C. 2917.32(A)(1) provides: "No person shall . . . [i]nitiate or circulate a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that the report or warning is false and likely to cause public inconvenience or alarm." R.T., through counsel, denied the allegations of the complaint. The case proceeded to trial on February 18, 2025.

{¶ 3} The record shows that R.T. was a new student at the middle school where the conduct occurred. He started at the school on September 30, 2024, which was a Monday. The assistant principal testified that on October 2, 2024, which was R.T.'s third day at the school, three students reported that R.T. was making comments about school shootings and that they were very uncomfortable with this. The school separated the students, spoke with them, and had the students write individual statements. The school also talked to two other students during the school's investigation, for a total of five students that reported hearing similar things. According to the assistant principal, there was talk about a school shooting, and she believed one student had reported that R.T. said there was going to be one on Friday. Although R.T. acknowledged to the assistant principal that he had asked some students if there had ever been a school shooter, he stated that he never threatened to shoot up the school. However, the students who testified indicated otherwise.

{¶ 4} One of the students testified that R.T. talked about how he "liked guns," he "thought they were cool," and he "thought it would be nice to go and start a school shooting." The student had written in an incident report that R.T. also said "since there hadn't been any shootings, that he was going to start one." Another student testified that R.T. made statements "quite a few times about shooting up the school" and that this made the student scared. At one point, R.T. asked if there had ever been any school shootings, and then he stated, "there's about to be." The student indicated that R.T. made statements all three days since starting at the school and that she "didn't know if [R.T.] was meaning it or if he was just joking around." The student also testified that R.T. "had said he has guns in his house" and did not specify if they were real guns or airsoft guns. Though the student did not report anything during the first two days, on the third day of R.T.'s comments, she went to the school office and reported the matter. The last student who testified indicated that R.T. asked on his first day at the school whether there had ever been a school shooting, and when the students responded, "not that we know of," R.T. stated, "there was going to be," but then he paused and stated, "just kidding." Although the student was not concerned at the time, the student was not present for what happened the following two days.

{¶ 5} Because of the nature of the threat, school officials removed R.T. from class and searched his locker for weapons. They discovered a sketchbook with drawings of weapons, guns, and violent images, as well as a few words causing further concern. The school prepared a critical incident report, gave R.T. an out-

of-school suspension, recommended an expulsion, and contacted the police. The police investigated the incident. A detective testified to the drawings that were found in R.T.'s locker, but recognized the students were not aware of the drawings.

{¶ 6} R.T. testified in the matter. He admitted that he asked students if there had ever been a school shooting and that he stated he needed an "18C." However, he maintained that he was trying to be funny and that he was referencing an airsoft gun and not a real gun. He was aware that it is illegal to have an 18C automatic weapon. He denied saying there was going to be a school shooting on Friday, and he denied trying to cause anyone to believe there might be a school shooting. Though he testified he did not intend to create alarm with the school, he realized he had caused alarm and great concern.

{¶ 7} Other testimony was provided in the matter. Ultimately, the juvenile court adjudicated R.T. delinquent of the sole count for making false alarms. The juvenile court ordered appellant to be placed on community control with probation supervision for a period of one year.

{¶ 8} R.T. timely appealed. He raises challenges to the sufficiency and the manifest weight of the evidence, and he claims the court erred by admitting certain evidence.

{¶ 9} When reviewing whether a juvenile adjudication of delinquency is supported by sufficient evidence or is against the manifest weight of the evidence, appellate courts employ the same standard of review that applies to adult criminal convictions. *In re C.H.*, 2025-Ohio-4955, ¶ 9, citing *In re E.W.*, 2025-Ohio-1461,

¶ 14 (8th Dist.). For a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259 (1991), paragraph two of the syllabus. For a manifest-weight-of-the-evidence challenge, this court, sitting as a "thirteenth juror," reviews the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 10} Under his sufficiency challenge, R.T. asserts that his adjudication was not supported by sufficient evidence that he initiated or circulated any report or warning. However, there was testimony that shows he initiated or circulated a warning of an impending school shooting. This was not merely a matter of a discussion about school shootings as argued by R.T. R.T. asked if there had ever been a school shooting, of which he associated with the students being fearful. He indicated that there was about to be one, and he proceeded to make comments concerning school shootings and shooting up the school over three consecutive days. There was some indication that the school shooting would occur that Friday.

R.T. also expressed his affinity for guns, he indicated that he had guns in his home, and he stated that he needed an 18C, which he knew was illegal for him to have. Several students were concerned by the comments and reported the matter, with one testifying that she was scared. The school took the threat seriously, investigated the matter, searched R.T.'s locker, created a critical incident report, contacted the police, and imposed the maximum suspension allowed with a recommendation for expulsion. Although R.T. maintains that there was no evidence that he knew his comments would lead to alarm, making false alarms requires knowledge that the warning was false and "is '*likely to cause* public inconvenience or alarm.'" (Emphasis sic.) S*tate v. Miller*, 2019-Ohio-5024, ¶ 19 (5th Dist.), quoting R.C. 2917.32(A)(1). The testimony herein was sufficient to establish that R.T. acted with the requisite knowledge. After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt.

{¶ 11} Under his manifest-weight-of-the-evidence challenge, R.T. again claims that there was no evidence that he knew his comments would lead to alarm. He maintains that he did not raise the subject of school shooters and that he was responding to being told he looked like a school shooter. However, there was testimony that "R.T. was talking about guns and shooting the school," he made several comments over three days, he stated "there's about to be" a school shooting, he thought guns were cool, and he stated he needed a certain gun. Though students

were not sure whether he was serious, as one student stated, she was "scared because he kept making comments like that all three days he was there" and "he said that he was going to shoot the school up, and I'm in that school." Though he later spoke of airsoft guns, his statements were about liking guns, having guns in his house, and needing an 18C. Other testimony and evidence were provided. After thoroughly reviewing the entire record in this matter, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we do not find this to be the exceptional case in which the evidence weighs heavily against the adjudication of delinquency. We are not persuaded by R.T.'s arguments otherwise.

{¶ 12} Next, R.T. claims the juvenile court erred by admitting into evidence certain exhibits and testimony concerning the drawings taken from appellant's locker, which he maintains were wholly irrelevant and prejudicial. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Garrett,* 2022-Ohio-4218, ¶ 155, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Pursuant to Evid.R. 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The record shows that the school was concerned because of the nature of R.T.'s threat, they searched his locker for weapons, and the drawings were discovered in his locker during the school's investigation. Conceivably, the drawings, which he stated he did not intend to

show the students at school, were relevant to showing R.T.'s knowledge that initiating or circulating a false report or warning of impending violence against humans is likely to cause public inconvenience or alarm. Nevertheless, even if it were error to allow the testimony and evidence pertaining to the drawings, it would be harmless error. Under the harmless-error doctrine, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). "[A]n error in admitting evidence may be deemed harmless beyond a reasonable doubt if when the improperly admitted evidence is excised, the remaining evidence provides overwhelming proof of the defendant's guilt." *State v. Roberts*, 2025-Ohio-5120, ¶ 138, citing *State v. Morris*, 2014-Ohio-5052, ¶ 32. Here, R.T.'s conduct prior to the discovery of the drawings proved the elements of the offense. We agree with appellee that even if the testimony and evidence relating to the drawings is excised, the remaining evidence provides overwhelming proof of R.T.'s adjudication beyond a reasonable doubt.

{¶ 13} Finally, R.T. claims the juvenile court erred by admitting testimony from one student about her prior written statement to school administrators that R.T. had made a specific threat about starting a school shooting. R.T. argues that the testimony was not admissible for impeaching the State's own witness under Evid.R. 607 or for refreshing memory under Evid.R. 612, while the State argues the testimony was admissible as a present sense impression under Evid.R. 803(1). However, because no objection was made during trial, R.T. has waived all but plain error. Here, R.T. has not argued, let alone demonstrated, that plain error occurred.

{¶ 14} To prevail under a plain-error analysis, the appellant "must demonstrate that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial." *State v. Echols*, 2024-Ohio-5088, ¶ 50, citing *State v. Knuff*, 2024-Ohio-902, ¶ 117. "Plain error should be noticed only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Cleaned up.) *Id.* In this matter, the record shows that multiple students reported comments made by R.T. concerning school shootings, guns, and an impending school shooting; the students heard similar things; and an incident report was made. Also, three students testified in the case to comments made by R.T. The testimony in question is cumulative to other testimony and evidence provided in the matter. Furthermore, "in a bench trial, judges are presumed to know the law and consider only material, admissible evidence." *State v. Hutchinson*, 2025-Ohio-4674, ¶ 32 (8th Dist.), citing *State v. Thomas*, 2002-Ohio-6624, ¶ 57. R.T. is unable to demonstrate any reasonable probability that the claimed error affected the outcome of trial, and no plain error has been shown.

{¶ 15} Appellant's assignments of error are overruled.

{¶ 16} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. A

certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR